IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 13 |
| WILLIAM E. KRAPE and DONNA R. KRAPE, dba WILLIAM and DONNA KRAPE TRUCKING, | Case No.: 1-06-bk-02287MDF |
| Debtors | |
| CHARLES J. DeHART, III, Standing Chapter 13 Trustee, Objectant | |
| v. | |
| WILLIAM E. KRAPE and DONNA R. KRAPE, dba WILLIAM and DONNA KRAPE TRUCKING, Respondents | |

## **OPINION**

The issue is this case is whether debtors may exempt property under 11 U.S.C. § 522(d)(1) that did not serve as their residence on the date that they filed their bankruptcy petition. I conclude that in this case, they may not.

**Factual and Procedural History**

William E. and Donna R. Krape ("Debtors") filed a joint chapter 13 case on October 13, 2006. Debtors' petition lists their street address as 670 Low Dutch Road, Gettysburg, Pennsylvania. They reside in a mobile home located at this address, which sits on land that formerly was part of a family farm owned by William Krape's father. Debtors live in the mobile home with an elderly aunt for whom they provide care. The property on which the mobile home is located was part of a larger parcel that was sold in 1994. The lot on which Debtors reside was reserved from the sale, and Debtors were given a twelve-year rent-free lease, which expired a few

1

months prior to the bankruptcy filing. Thereafter, Debtors negotiated a five-year lease extension at a monthly rental rate of $350.00. At the time of the hearing they continued to reside in their mobile home. Debtors' current residence at 670 Low Dutch Road serves as Debtors' business and personal mailing address and as their address for voter registration purposes.

Although Debtors currently reside at 670 Low Dutch Road, they are seeking to exempt a property they own located in the same area at 368 Low Dutch Road (the "368 Property"). Debtors purchased the property in 2000 and occupied it for approximately one year. The 368 Property is listed in the schedules as having a value of $126,000.00 with an outstanding mortgage of $97,923.35. When Debtors filed their petition they were leasing the 368 Property to Mr. Krape's daughter, who paid rent to assist Debtors in making the mortgage payments. At the time of the hearing, however, Mr. Krape's daughter had vacated the 368 Property and it was being leased to a third party.

In their schedules, Debtors estimate that they have $28,076.65 in equity in the 368 Property, which they claim as exempt under § 522(d)(1). Charles J. DeHart, the Standing Chapter 13 Trustee (the "Trustee") objects both to the exemption claim and to confirmation of Debtors' proposed plan.[1] This matter is ready for decision.[2]

---

[1] Under 11 U.S.C. § 1325(a)(4), a chapter 13 plan must pay unsecured creditors at least the same amount that they would receive if the case were filed under chapter 7 and the estate were liquidated. If the Trustee's objection is sustained, to confirm their plan Debtors will have to commit the value of their equity in the 368 Property to the payment of unsecured debts.

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(B). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

2

## Discussion

The Trustee's objection to the plan will be determined by the resolution of the objection to Debtors' exemption claim. Accordingly, I will address the latter objection first.

A debtor may claim as exempt the "aggregate interest, not to exceed $18,450 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1). Under § 522(m), each debtor in a joint case is entitled to claim a separate § 522(d)(1) exemption up to $18,450.00. In the instant case, Debtors are attempting to exempt the available equity in the 368 Property, which is less than the residence exemption cap in cases with joint debtors.

Under Fed. R. Bankr. P. 4003(c), as the objecting party the chapter 13 trustee has the burden of proving that the exemption is not properly claimed. If evidence is presented rebutting the presumption, the burden of production shifts to the debtor to come forward with evidence to support the exemption. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 (9th Cir. 1999); *In re Roberts*, 280 B.R. 540, 544-45 (Bankr. D. Mass. 2001). Because Debtors have elected the federal exemptions under § 522(d), Debtors' ability to exempt the 368 Property is determined under federal law. *In re Lusiak*, 247 B.R. 699, 702 (Bankr. N.D. Ohio 2000); *In re Brent*, 68 B.R. 893, 895 (Bankr. D. Vt. 1987). The parties agree that "a debtor's entitlement to an exemption from property of a bankruptcy estate is determined as of the filing date of a bankruptcy petition." *Makoroff v. Buick (In re Buick)*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) (internal quotations omitted).

To determine whether Debtors may exempt the 368 Property as a residence, the Court must first examine the language of § 522(d)(1) within the context the Bankruptcy Code's

3

exemption scheme. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) *quoting United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026 (1989) (other citations and internal quotations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843 (1997) *citing Ron Pair,* 489 U.S. at 240. *See also Price v. Delaware State Police Federal Credit Union*, 370 F.3d 362, 369 (3rd Cir. 2004).

Section 522(d)(1) plainly provides that the exemption is available for real or personal property that the debtor or his dependent is occupying as a residence. *In re Boward*, 334 B.R. 350, 352 (Bankr. D. Mass. 2005) ("The statutory language is free of ambiguity and plain in its meaning: the debtor must be residing in the property at the time of the commencement of the bankruptcy case."); *In re Gandy*, 327 B.R. 807, 809 (Bankr. S.D. Tex. 2005) ("the phrase 'uses as a residence' denotes occupancy of the proposed exempt property by the debtor"). Therefore, the statute on its face clearly contemplates current use of the property as a residence, not the use of the property as a debtor's home in the future.[3] *But cf. In re DeMasi*, 227 B.R. 506 (D.R.I.

---

[3]Some bankruptcy courts interpreting § 522(d)(1) have found the term "residence" to be ambiguous and have resorted to an examination of the legislative history of the Bankruptcy Code of 1978 to construe its meaning. *See In re Brown*, 299 B.R. 425, 427-28 (Bankr. N.D. Tex 2003); *In re Marsico*, 278 B.R. 1, 4 (Bankr. D.N.H. 2002); *Buick*, 237 B.R. at 610. According to these courts, the legislative history demonstrates that the term "residence" should be equated with the term "homestead" as interpreted under state law. I come to a similar conclusion through consideration of § 522(d)(1) within the broader context of the exemption section and without reference to legislative history.

1998) (debtor's remainder interest in property in which debtor never resided eligible for § 522(d)(1) exemption; debtor excluded from premises by life tenant).

Debtors argue that whether a given property qualifies as a "residence" under § 522(d)(1) is determined by examining Debtors' intentions regarding the property and by considering the purpose exemptions serve in bankruptcy. Debtors assert that on the date they filed their petition, they did not intend for 670 Low Dutch Road to serve as their permanent residence and that they intend to reoccupy the 368 Property when they complete their plan. In support of their assertion, Debtors note that they currently lease the ground on which the mobile home is situated, and that they do not have an option to renew this lease once it expires.

Section 522(d)(1) does not specifically address whether a debtor's stated intention to return to a former residence preserves an exemption claim in real or personal property. However, § 522(d)(1) is part of an exemption framework that comprises federal and state law. Unless a state has opted-out of the federal exemptions under § 522(b)(2), debtors have a choice between the federal bankruptcy exemptions under (d)(1) and state and nonbankruptcy federal exemptions under § 522(b)(3). One of the most significant protections against creditor claims available under state law is the "homestead" exemption.[4] Accordingly, it is reasonable to deduce that the federal exemption under § 522(d)(1) is an alternative to homestead exemptions available in most states.

---

[4]Forty-five states have homestead exemption statutes or constitutional provisions protecting homesteads. However, the protection they afford to a debtor's residence varies widely. *See* Richard M. Jynes, Anup Malani & Eric A. Posner, *The Political Economy of Property Exemption Laws*, 47 J. L. & Econ. 19 (2004). Homestead exemptions afforded to debtors in states that have opted-out of the federal scheme range from $7,500.00 for a homestead in Tennessee occupied by a debtor under 62 years of age (Tenn. Code Ann.§ 26-2-301 (2005)) to a homestead exemption in an unlimited dollar amount in states such as Florida (Fla. Const. art. 10, § 3), Kansas (Kan. Const. art. 15, § 9 (2006), Kan. Stat. Ann. §60-2301 (2006)) and South Dakota (S.D. Codified Laws § 43-31-1 (Michie 2006)).

5

Several bankruptcy courts have determined that § 522(d)(1) is a federal equivalent of a state homestead exemption. *See In re Anderson*, 340 B.R. 254, 256 (Bankr. W.D. Tex. 1999); *Buick*, 237 B.R. at 610; *In re Tomko*, 87 B.R. 372, 374 (Bankr. E.D. Pa. 1983); *Brent*, 68 B.R. at 895. Decisions construing state law homestead exemptions, therefore, may assist in determining whether a debtor's expressed intention to return to a property vacated voluntarily affects a debtor's ability to claim the property as exempt.

In *Buick*, the bankruptcy court surveyed decisions on state exemption laws to identify conditions that would cause a debtor to forfeit his right to claim a homestead exemption. The court distilled three general principles that govern the retention of a homestead when it has been vacated: (a) a property does not qualify as a homestead "unless it is occupied, either actually or constructively;" (b) a property can lose its status as a homestead only through "death, alienation and abandonment;" and (c) a homestead is not abandoned unless the absence is voluntary. *Buick*, 237 B.R. at 610 (citations omitted). Further, the concept of a "homestead" is not so narrow as to bar an exemption claim when a debtor has been involuntarily or temporarily forced to vacate the residence. *See Id.* at 610; *In re Thomas*, 27 B.R. 367, 370-71 (Bankr. S.D.N.Y. 1983). In these situations a debtor is regarded as constructively occupying the premises.

Debtors argue that because they intend to return to the 368 Property when their bankruptcy is completed, they are constructively occupying the residence and have not abandoned it. Courts generally have determined that a debtor's expressions of intent to return to a property at some point in the future are insufficient to establish constructive occupancy. *See In re Roberts*, 280 B.R. 540, 546 (Bankr. D. Mass. 2001) (interpreting Massachusetts law) (citing cases); *Lusiak*, 247 B.R. at 703 ( interpreting § 522(d)(1)). In addition to expressions of intent,

6

the Court also must consider actions taken by a debtor consistent with a debtor's professed intentions and the reasons for the absence from the property. In addition to a stated intent to return to the claimed homestead, evidence that the absence from the homestead is involuntary or compelled supports a finding that a debtor has not abandoned the property. *Id.*

In the within case, Debtors' testimony as to why they vacated the residence suggests two primary motivations – relief from financial pressures and a desire to assist family members. The Court concludes that Debtors voluntarily left the residence they acquired in 2000 for two reasons – they could not afford the mortgage payments, and they wanted to provide a place for William Krape's daughter and grandchildren to reside. No event compelled Debtors to leave. When Mr. Krape's daughter vacated the premises, Debtors did not return to their former residence although there was no legal impediment to their moving back into the property.[5] Instead they opted to rent the 368 Property to third parties because they could not afford to make the mortgage payments.

Shortly before they filed for bankruptcy, Debtors' 12-year lease on their mobile home lot expired. Again, they decided not to return to the 368 Property and entered into an agreement to renew the mobile home lot lease for a five-year term.[6] Renting one's home does not necessarily constitute an abandonment of the property as a homestead. To the contrary, it can be considered a means of preserving the homestead when a debtor is unable to occupy the property because of military duty or some other compelled absence. *See Anderson*, 240 B.R. at 259. But in the within

---

[5]William Krape testified that they did not move back into the 368 Property because his aunt has dementia, and they were concerned that the move would upset her.

[6]William Krape testified that the lease renewal was executed at about the same time Debtors filed for relief in October 2006. Schedule "G," however, states that the term of the renewed lease commenced on June 27, 2006.

case, Debtors had several opportunities to return to the 368 Property and chose to continue to make their home elsewhere.

For all of these reasons, I conclude that the Trustee has met his burden, under Fed.R.Bankr.P. 4003(c) to produce evidence rebutting the presumption that Debtors' claimed exemption is valid. Therefore, the objection to Debtors' claim of exemptions will be sustained. Consequently, the Trustee's objection to Debtors' plan also must be sustained because Debtors' non-exempt equity in the 368 Property, if liquidated, would provide a greater dividend to unsecured creditors than they would receive through Debtors' proposed chapter 13 plan. An appropriate order will be entered.

By the Court,

Mary D. France
Bankruptcy Judge

Date: July 19, 2007

*This document is electronically signed and filed on the same date.*